## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KEITH BROOKS, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | |
| v. | Case No.:_____ |
| SECURITY CREDIT UNION FOUNDATION and MARQUIS SOFTWARE SOLUTIONS, | |
| *Defendants.* | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Keith Brooks, ("Plaintiff") brings this Class Action Complaint against Security Credit Union Foundation ("Security Credit Union") and Marquis Software Solutions ("Marquis") (collectively "Defendants") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action against Defendants for their failure to properly secure and safeguard the personally identifiable information ("PII") of their customers, including, but not limited to: names along with dates of birth, Social

Security numbers, tax identification numbers, financial account numbers and/or payment card data.

2.      Defendant Security Credit Union is a financial institution and requires customers to provide their PII in connection with the transaction.

3.      On, or about, August 2025, Defendant Marquis detected unusual activity on its IT systems and then notified Defendant Security Credit Union. Marquis provides services to Security Credit Union. On or about October 27, 2025, Marquis notified Security Credit Union that a third party viewed or copied certain files on the Marquis network that contained some of Security Credit Union members' personal information.  Thus, Plaintiff's personal information—which was entrusted to Defendants on the mutual understanding that Defendants would protect it against unauthorized disclosure—was accessed and exfiltrated in a data breach (hereafter referred to as the "Data Breach").

4.      On or about December 2025, Defendants sent out data breach notice letters to individuals who were affected by the data breach. Omitted from the data breach notice letter were the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these omitted details have not been explained or clarified to Plaintiff, who retains a vested interest in ensuring that their PII remains protected.

5.      Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's PII was a known risk to Defendants, and thus, Defendants was on notice that failing to take steps necessary to secure the PII from those risks left the data in a dangerous condition.

6.      The Data Breach was a direct result of Defendants' failure to implement reasonable safeguards to protect PII from a foreseeable and preventable risk of unauthorized disclosure. Had Defendants implemented administrative, technical, and physical controls consistent with industry standards and best practices, it could have prevented the Data Breach.

7.      Defendants' conduct resulted in the unauthorized disclosure of Plaintiff's private information to cybercriminals. The unauthorized disclosure of Plaintiff's PII constitutes an invasion of a legally protected privacy interest, that is traceable to the Defendants' failure to adequately secure the PII in their custody, and has resulted in actual, particularized, and concrete harm to the Plaintiff.  Plaintiff suffered actual injury in the form of damages to and diminution in the value of the PII that was compromised as a result of the Data Breach. The injuries Plaintiff suffered, as described herein, can be redressed by a favorable decision in this matter.

8.      Defendants have not provided any assurances that: all data acquired in the Data Breach, or copies thereof, have been recovered or destroyed; or, that Defendants have modified their data protection policies, procedures, and practices

3

sufficient to avoid future, similar, data breaches.

9.      Defendants' conduct, as evidenced by the circumstances of the Data Breach, has created a substantial risk of future identity theft, fraud, or other forms of exploitation. The circumstances demonstrating a substantial risk of future exploitation include, but are not limited to:

a.  **Sensitive Data Type**: The data acquired in the Data Breach included unencrypted names, date of birth, social security numbers, tax identification numbers, financial account numbers, and payment card data. *Generally, sensitive data that creates a risk of future identity theft or fraud includes*: account names & passwords, social security numbers, dates of birth, non-truncated debit/credit card numbers, financial data, healthcare records, and biometric data. Upon information and belief, this category of data is used by cybercriminals to perpetuate fraud, identity theft, and other forms of exploitation.[1]

b.  **Data Breach Type**: The data breach affected more than 780,000 individuals due to infiltration of Marquis' network, a fintech provider that works with over 700 banks and credit unions across the US. The incident began on August 14, when attackers broke into the company's network by exploiting a SonicWall firewall vulnerability. After discovering the intrusion, Marquis reportedly shut down affected systems and brought in outside cybersecurity specialists to investigate. The Marquis review, completed in late October 2025, found that unauthorized actors accessed and copied files containing personal and financial information from certain business customers.[2]

10.    The imminent risk of future harm resulting from the Data Breach is

---

[1] https://www.f-secure.com/us-en/articles/why-do-hackers-want-your-personal-information

[2] https://www.infosecurity-magazine.com/news/marquis-software-breach/

traceable to the Defendants' failure to adequately secure the PII in their custody, and has created a separate, particularized, and concrete harm to the Plaintiff.

11.     More specifically, Plaintiff's exposure to the substantial risk of future exploitation caused Plaintiff to: (i) spend money on mitigation measures like credit monitoring services and/or dark web searches; (ii) lose time and effort spent responding to the Data Breach; and/or (iii) experience emotional distress associated with reviewing accounts for fraud, changing usernames and passwords or closing accounts to prevent fraud, and general anxiety over the consequences of the Data Breach. The harm Plaintiff suffered can be redressed by a favorable decision in this matter.

12.     Armed with the PII acquired in the Data Breach, data thieves have already engaged in theft and can, in the future, commit a variety of crimes including, opening new financial accounts, taking out loans, using Plaintiff's information to obtain government benefits, file fraudulent tax returns, obtain driver's licenses, and give false information to police during an arrest.

13.     As a result of the Data Breach, Plaintiff suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal

damages; and (ix) the continued and increased risk their PII will be further misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access on the dark web or otherwise; and (b) remains backed up under Defendants' possession or control and is subject to further unauthorized disclosures so long as Defendants fails to implement appropriate and reasonable measures to protect the data.

14.     Plaintiff brings this class action lawsuit individually, and on behalf of all those similarly situated, to address Defendants' inadequate data protection practices and for failing to provide timely and adequate notice of the Data Breach.

15.     Through this Complaint, Plaintiff seeks to remedy these harms individually, and on behalf of all similarly situated individuals whose PII was accessed during the Data Breach. Plaintiff has a continuing interest in ensuring that personal information is kept confidential and protected from disclosure, and Plaintiff should be entitled to injunctive and other equitable relief.

## JURISDICTION & VENUE

16.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, including Plaintiff, is a citizen of a state different from Defendants.

17.     This Court has personal jurisdiction over Defendant Security Credit Union because its principal place of business is in this District. Defendant has also purposefully availed itself of the laws, rights, and benefits of Michigan.

18.     This Court has personal jurisdiction over Defendant Marquis because Defendant purposefully availed itself of the laws, rights, and benefits of Michigan.

19.     Venue is proper under 28 U.S.C §1391(b) because Defendant Security Credit Union maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## PARTIES

20.     Plaintiff Keith Brooks is a citizen of the State of Michigan. At all relevant times, Plaintiff has been a resident of Flint, Michigan.

21.     Defendant, Security Credit Union Foundation, maintains a principal place of business at 2404 S Linden Rd, 2404 Linden Rd, Flint, MI 48532.

22.     Defendant, Marquis Software Solutions, maintains a principal place of business at 5208 Tennyson Pkwy, Suite 120, Plano, TX 75024.

## FACTUAL ALLEGATIONS

23.     Defendant Marquis provides marketing and compliance software services to many financial institutions including Defendant Security Credit Union. Security Credit Union is a financial institution and requires customers to provide

7

their PII in connection with the transaction.

24.     Plaintiff and Class Members (later defined) are current and former customers of Defendants' various services.

25.     In the course of their relationship, Plaintiff and Class Members provided Defendants with at least the following: names along with dates of birth, Social Security numbers, tax identification numbers, financial account numbers and/or payment card data.

26.     Defendants promised to use reasonable technical, administrative, and physical safeguards to protect the PII it collected.  These promises were contained in the applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

27.     Plaintiff and the Class Members, as customers of Defendants, relied on these representations and on this sophisticated business entity to keep their PII confidential, securely maintained, and to make only authorized disclosures of this information.

28.     On, or about, August 2025, Marquis detected unusual activity on its IT systems and, on October 27, 2025, provided an updated to Security Credit Union who determined that Plaintiff's personal information was accessed and exfiltrated in the Data Breach.

29.     On or about December 2025, Defendants sent out data breach notice

letters to individuals who were affected by the data breach.

### *Data Breaches Are Avoidable*

30.     Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's PII was a known risk to Defendants, and thus, Defendants were on notice that failing to take steps necessary to secure the PII from those risks left the data in a dangerous condition.

31.     Upon information and belief, the Data Breach was a direct result of Defendants' failure to: (i) identify risks and potential effects of collecting, maintaining, and sharing personal information; (ii) adhere to their published privacy practices; (iii) implement reasonable data protection measures for the collection, use, disclosure, and storage of personal information; and/or (iv) ensure their third-party vendors were required to implement reasonable data protection measures consistent with Defendants' data protection obligations.

32.     To detect and prevent cyber-attacks, Defendants could and should have implemented the following measures:

Reasonable Safeguards

     a.  Regularly patch critical vulnerabilities in operating systems, software, and firmware on devices. Consider using a centralized patch management system.

     b.  Check expert websites (such as www.us-cert.gov) and your software vendors' websites regularly for alerts about new vulnerabilities and implement policies for installing vendor-approved patches to correct problems.

c.  Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks. Depending on your circumstances, appropriate assessments may range from having a knowledgeable employee run off-the-shelf security software to having an independent professional conduct a full-scale security audit.

d.  Scan computers on your network to identify and profile the operating system and open network services. If you find services that you don't need, disable them to prevent hacks or other potential security problems.

e.  Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

f.  Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email.

g.  Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

h.  Configure firewalls to block access to known malicious IP addresses.

i.  Set anti-virus and anti-malware programs to conduct regular scans automatically.

j.  Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

k.  Configure access controls—including file, directory, and network share permissions— with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

l.  Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

m. Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

n. Consider disabling Remote Desktop protocol (RDP) if it is not being used.

o. Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

p. Execute operating system environments or specific programs in a virtualized environment.

q. Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

r. Conduct an annual penetration test and vulnerability assessment.

s. Secure your backups.[3]

t. Identify the computers or servers where sensitive personal information is stored.

u. Identify all connections to the computers where you store sensitive information. These may include the internet, electronic cash registers, computers at your branch offices, computers used by service providers to support your network, digital copiers, and wireless devices like smartphones, tablets, or inventory scanners.

v. Don't store sensitive consumer data on any computer with an internet connection unless it's essential for conducting your business.

---

[3] *How to Protect Your Networks from Ransomware*, at p.3, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (accessed June 11, 2024).

w.  Encrypt sensitive information that you send to third parties over public networks (like the internet) and encrypt sensitive information that is stored on your computer network, laptops, or portable storage devices used by your employees. Consider also encrypting email transmissions within your business.

x.  Regularly run up-to-date anti-malware programs on individual computers and on servers on your network.

y.  Restrict employees' ability to download unauthorized software. Software downloaded to devices that connect to your network (computers, smartphones, and tablets) could be used to distribute malware.

z.  To detect network breaches when they occur, consider using an intrusion detection system.

aa. Create a "culture of security" by implementing a regular schedule of employee training. Update employees as you find out about new risks and vulnerabilities.

bb. Tell employees about your company policies regarding keeping information secure and confidential. Post reminders in areas where sensitive information is used or stored, as well as where employees congregate.

cc. Teach employees about the dangers of spear phishing—emails containing information that makes the emails look legitimate. These emails may appear to come from someone within your company, generally someone in a position of authority. Make it office policy to independently verify any emails requesting sensitive information.

dd. Before you outsource any of your business functions investigate the company's data security practices and compare their standards to yours.[4]

---

[4]  *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (accessed June 11, 2024).

33.     Given that Defendants collected, used, and stored PII, Defendants could and should have identified the risks and potential effects of collecting, maintaining, and sharing personal information.

34.     Without identifying the potential risks to the personal data in Defendants' possession, Defendants could not identify and implement the necessary measures to detect and prevent cyberattacks. The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of Plaintiff's and the Class Members' PII.

35.     Defendants knew and understood unencrypted PII is valuable and highly sought after by cybercriminals seeking to illegally monetize that data. At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if a data breach occurred, including the significant cost that would be imposed on Plaintiff and the Class Members as a result.

### *Plaintiff and Class Members Sustained Damages in the Data Breach*

36.     The invasion of Plaintiff's and Class Members' privacy suffered in this Data Breach constitutes an actual, particularized, redressable injury traceable to the Defendants' conduct. As a consequence of the Data Breach, Plaintiff and Class Members sustained monetary damages that exceed the sum or value of

$5,000,000.00.

37.   Additionally, Plaintiff and Class Members face a substantial risk of future identity theft, fraud, or other exploitation where their names, social security numbers, and dates of birth were targeted by a sophisticated hacker known for stealing and reselling sensitive data on the dark web. The substantial risk of future identity theft and fraud created by the Data Breach constitutes a redressable injury traceable to the Defendants' conduct.

38.   Furthermore, Plaintiff and Class Members face a substantial risk of future spam, phishing, or other attacks designed to trick them into sharing sensitive data, downloading malware, or otherwise exposing themselves to cybercrime, where their names and contact information were acquired in the Data Breach and subsequently released on the dark web. The substantial risk of future exploitation created by the Data Breach constitutes a redressable injury traceable to the Defendants' conduct.

39.   Upon information and belief, a criminal can easily link data acquired in the Data Breach with information available from other sources to commit a variety of fraud related crimes. An example of criminals piecing together bits and pieces of data is the development of "Fullz" packages.[5] With "Fullz" packages, cyber-

---

[5] "Fullz" is term used by cybercriminals to describe "a package of all the personal and financial records that thieves would need to fraudulently open up new lines of credit in a person's name." A Fullz package typically includes the victim's name,

14

criminals can combine multiple sources of PII to apply for credit cards, loans, assume identities, or take over accounts.

40. Given the type of targeted attack in this case, the sophistication of the criminal claiming responsibility for the Data Breach, the type of PII involved in the Data Breach, the hacker's behavior in prior data breaches, the ability of criminals to link data acquired in the Data Breach with information available from other sources, and the fact that the stolen information has been placed, or will be placed, on the dark web, it is reasonable for Plaintiff and the Class Members to assume that their PII was obtained by, or released to, criminals intending to utilize the PII for future identity theft-related crimes or exploitation attempts.

41. The substantial risk of future identity theft, fraud, or other exploitation that Plaintiff and Class Members face is sufficiently concrete, particularized, and imminent that it necessitates the present expenditure of funds to mitigate the risk. Consequently, Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to understand and mitigate the effects of the Data Breach.

42. For example, the Federal Trade Commission has recommended steps

---

address, credit card information, social security number, date of birth, bank name, routing number, bank account numbers and more. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm

that data breach victims take to protect themselves and their children after a data breach, including: (i) contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity); (ii) regularly obtaining and reviewing their credit reports; (iii) removing fraudulent charges from their accounts; (iv) closing new accounts opened in their name; (v) placing a credit freeze on their credit; (vi) replacing government-issued identification; (vii) reporting misused Social Security numbers; (viii) contacting utilities to ensure no one obtained cable, electric, water, or other similar services in their name; and (ix) correcting their credit reports.[6]

43.     As a consequence of the Data Breach, Plaintiff and Class Members sustained or will incur monetary damages to mitigate the effects of an imminent risk of future injury. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year. The cost of dark web scanning and monitoring services can cost around $180 per year.

44.     As a result of the Data Breach, Plaintiff's and Class Members' PII, which has an inherent market value in both legitimate and illegitimate markets, has been damaged and diminished by its unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their

---

[6] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps

property, resulting in an economic loss. Moreover, the PII is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

45.     Personal information is of great value, in 2019, the data brokering industry was worth roughly $200 billion.[7] Data such as name, address, phone number, and credit history has been sold at prices ranging from $40 to $200 per record.[8] Sensitive PII can sell for as much as $363 per record.[9]

46.     Furthermore, Defendants' poor data security practices deprived Plaintiff and Class Members of the benefit of their bargain. By transacting business with Plaintiff and Class Members, collecting their PII, using their PII for profit or to improve the ability to make profits, and then permitting the unauthorized disclosure of the PII, Plaintiff and Class Members were deprived of the benefit of their bargain.

47.     When agreeing to pay Defendants for products or services, consumers understood and expected that they were, in part, paying for the protection of their personal data, when in fact, Defendants did not invest the funds into implementing reasonable data security practices. Accordingly, Plaintiff and Class Members

---

[7] *Column: Shadowy data brokers make the most of their invisibility cloak*, https://www.latimes.com/business/story/2019-11-05/column-data-brokers
[8] *In the Dark*, VPNOverview, 2019, available at:
https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/
[9] *See, e.g.*, John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendants.

48.     Through this Complaint, Plaintiff seeks redress individually, and on behalf of all similarly situated individuals, for the damages that resulted from the Data Breach.

## **CLASS ALLEGATIONS**

49.     Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

50.     The Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class**
All individuals residing in the United States whose PII was accessed and acquired by an unauthorized party as a result of a data breach that occurred on, or about, August 2025, as reported by Defendants (the "Class").

**Michigan Subclass**
All individuals residing in Michigan whose PII was accessed and acquired by an unauthorized party as a result of a data breach that occurred on, or about, August 2025, as reported by Defendants (the "Michigan Subclass").

51.     Collectively, the Class and Michigan Subclass are referred to as the "Classes" or "Class Members."

52.     Excluded from the Classes are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants has a controlling interest; all individuals who

make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

53. Plaintiff reserves the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

54. <u>Numerosity</u>: The members of the Classes are so numerous that joinder of all members is impracticable, if not completely impossible. The members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time and such number is exclusively in the possession of Defendants, upon information and belief, 780,000 individuals were impacted in the Data Breach.

55. Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Classes. The questions of law and fact common to the Classes that predominate over questions which may affect individual Class Members, includes the following:

a. Whether and to what extent Defendants had a duty to protect the PII of Plaintiff and Class Members;

b. Whether Defendants had a duty not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

c. Whether Defendants failed to adequately safeguard the PII of Plaintiff and Class Members;

    d.  Whether Defendants required their third-party vendors to adequately safeguard the PII of Plaintiff and Class Members;

    e.  When Defendants actually learned of the Data Breach;

    f.  Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

    g.  Whether Defendants violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

    h.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    i.  Whether Defendants adequately addressed and fixed the practices, procedures, or vulnerabilities which permitted the Data Breach to occur;

    j.  Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendants' wrongful conduct;

    k.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm faced as a result of the Data Breach.

56.   <u>Typicality</u>: Plaintiff's claims are typical of those of the other members of the Classes because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Classes.

57.   <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of

uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

58.    <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

59.    <u>Superiority and Manageability</u>: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could

not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

60. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since Defendants would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Classes and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

61. The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

62. Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

63.     Unless a Class-wide injunction is issued, Defendants may continue in their failure to properly secure the PII of Classes, Defendants may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendants may continue to act unlawfully as set forth in this Complaint.

64.     Further, Defendants has acted on grounds that apply generally to the Classes as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

65.     Likewise, particular issues under Rule 42(d)(1) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.   Whether Defendants failed to timely notify the Plaintiff and the Classes of the Data Breach;

    b.   Whether Defendants owed a legal duty to Plaintiff and the Classes to exercise due care in collecting, sharing, storing, and safeguarding their PII;

    c.   Whether Defendants' (or their vendors') security measures to protect their networks were reasonable in light of industry best practices;

    d.   Whether Defendants' (or their vendors') failure to institute adequate data protection measures amounted to negligence;

    e.   Whether Defendants failed to take commercially reasonable steps to safeguard consumer PII;

    f.   Whether Defendants made false representations about their data privacy practices and commitment to the security and confidentiality of

customer information; and

g.  Whether adherence to FTC recommendations and best practices for protecting personal information would have reasonably prevented the Data Breach.

## CAUSES OF ACTION
### (*On behalf of Plaintiff and the Classes*)

### COUNT 1: NEGLIGENCE/NEGLIGENCE *PER SE*

66.  Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

67.  Defendants require their customers, including Plaintiff and Class Members, to submit PII in the ordinary course of providing products or services.

68.  Defendants gathered and stored the PII of Plaintiff and Class Members as part of their business of soliciting their services to customers. Plaintiff and Class Members entrusted Defendants with their PII with the understanding that Defendants would adequately safeguard their information.

69.  Defendants had full knowledge of the types of PII Defendants collected and the types of harm that Plaintiff and Class Members would suffer if that data was accessed and exfiltrated by an unauthorized third-party.

70.  By collecting, storing, sharing, and using the Plaintiff's and Class Members' PII for commercial gain, Defendants assumed a duty to use reasonable means to safeguard the personal data Defendants obtained.

71.  Defendants' duty included a responsibility to ensure it: (i) implemented

24

reasonable administrative, technical, and physical measures to detect and prevent unauthorized intrusions into their information technology and/or cloud environments; (ii) contractually obligated their vendors to adhere to the requirements of Defendants' privacy policy; (iii) complied with applicable statutes and data protection obligations; (iv) conducted regular privacy assessments and security audits of Defendants' and/or their vendors' data processing activities; (v) regularly audited for compliance with contractual and other applicable data protection obligations; and, (vi) provided timely notice to individuals impacted by a data breach event.

72.     Defendants had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits unfair or deceptive trade practices that affect commerce. Deceptive practices, as interpreted by the FTC, include failing to adhere to a company's own published privacy policies.

73.     Defendants also had a duty to exercise appropriate clearinghouse practices to remove PII that Defendants was no longer required to retain.

74.     Defendants had a duty to notify Plaintiff and the Classes of the Data Breach promptly and adequately. Such notice was necessary to allow Plaintiff and the Classes to take steps to prevent, mitigate, and repair any fraudulent usage of their PII.

75.    Defendants violated Section 5 of the FTC Act, and other state consumer protection statutes by failing to use reasonable measures to protect PII. Defendants' violations of Section 5 of the FTC Act, and other state consumer protection statutes, constitutes negligence *per se*.

76.    Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendants includes, but are not limited to, the following:

    a. Failing to implement organizational controls, including a patch management policy to track and manage updates and patches for known vulnerabilities.

    b. Failing to have defined periods when patches must be installed and/or an automated means of determining what patches are needed, where they are needed, and the status of current patch levels by location.

    c. Failing to encrypt personally identifying information in transit and at rest.

    d. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII.

    e. Failing to adequately monitor the security of their networks and systems.

    f. Allowing unauthorized access to PII.

    g. Failing to detect in a timely manner that PII had been compromised.

    h. Failing to remove former customers' PII it was no longer required to retain.

     i.  Failing to timely and adequately notify Plaintiff and Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

     j.  Failing to implement data security practices consistent with Defendants' published privacy policies.

77.    Plaintiff and Class Members were within the class of persons the Federal Trade Commission Act was intended to protect and the type of harm that resulted from the Data Breach was the type of harm the statue was intended to guard against.

78.    The injuries resulting to Plaintiff and the Classes because of Defendants' failure to use adequate security measures was reasonably foreseeable.

79.    Plaintiff and the Classes were the foreseeable victims of a data breach. Defendants knew or should have known of the inherent risks in collecting and storing PII, the critical importance of protecting that PII, and the necessity of updating, patching, or fixing critical vulnerabilities in their networks.

80.    Plaintiff and the Classes had no ability to protect the PII in Defendants' possession. Defendants were in the best position to protect against the harms suffered by Plaintiff and the Classes as a result of the Data Breach.

81.    But for Defendants' breach of duties owed to Plaintiff and the Classes, their PII would not have been compromised. There is a close causal connection between Defendants' failure to implement reasonable security measures to protect

the PII of Plaintiff and the Classes and the harm, or risk of imminent harm, suffered by Plaintiff and the Classes.

82. As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendants' possession or control and is subject to further unauthorized disclosures so long as Defendants fails to implement appropriate and reasonable measures to protect the PII.

83. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

84. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to: (i) strengthen their data protection procedures; (ii) patch all critical vulnerabilities; and (iii) to provide adequate credit monitoring to all affected by the Data Breach.

## COUNT 2: BREACH OF IMPLIED CONTRACT

85.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

86.     Defendants require their customers, including Plaintiff and Class Members, to submit PII in the ordinary course of providing products or services.

87.     Defendants published a privacy policy to inform the public about how Defendants collect, use, share, and protect the information Defendants gather in connection with the provision of those products or services.

88.     In so doing, Plaintiff and Class Members entered implied contracts with Defendants by which Defendants agreed to use reasonable technical, administrative, and physical safeguards to protect against unauthorized access to, use of, or disclosure of the personal information it collects and stores.

89.     Plaintiff and Class Members would not have entrusted their PII to Defendants in the absence of an expressed or implied promise to implement reasonable data protection measures.

90.     Plaintiff and Class Members fully and adequately performed their obligations under the implied contract with Defendants.

91.     Defendants breached the implied contract with Plaintiff and Class Members which arose from the course of conduct between the parties, as well as disclosures on the Defendants' web site, privacy policy, and in other documents, all

of which created a reasonable expectation that the personal information Defendants collected would be adequately protected and that the Defendants would take such actions as were necessary to prevent unauthorized access to, use of, or disclosure of such information.

92.     As a direct and proximate result of Defendants' breach of an implied contract, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendants' possession or control and is subject to further unauthorized disclosures so long as Defendants fails to implement appropriate and reasonable measures to protect the PII.

93.     Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to: (i) strengthen their data protection procedures; (ii) patch all critical vulnerabilities; and (iii) to provide adequate credit monitoring to all affected by the Data Breach.

## COUNT 3: UNJUST ENRICHMENT

94.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

95.    Plaintiff brings this Count in the alternative to the breach of implied contract count above.

96.    By providing their PII, Plaintiff and Class Members conferred a monetary benefit on Defendants. Defendants used the PII to market, advertise, and sell additional services to Plaintiff and Class Members. Defendants knew that Plaintiff and Class Members conferred a benefit upon them and have accepted and retained that benefit.

97.    By collecting the PII, Defendants was obligated to safeguard and protect such information, to keep such information confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been compromised or stolen.

98.    Defendants failed to secure Plaintiff's and Class Members' PII and, therefore, it would be unjust for Defendants to retain any of the benefits that Plaintiff and Class Members conferred upon Defendants without paying value in return.

99.    As a direct and proximate result of the Defendants' conduct, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and

opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendants' possession or control and is subject to further unauthorized disclosures so long as Defendants fails to implement appropriate and reasonable measures to protect the PII.

100.   Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

## COUNT 4: INVASION OF PRIVACY

101.   Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

102.   Plaintiff and Class Members had a legitimate expectation of privacy in their personally identifying information such as names, social security numbers, dates of birth, tax identification numbers, financial account numbers and/or payment card data.

103.   Plaintiff and Class Members were entitled to the protection of this

information from disclosure to unauthorized third parties.

104.    Defendants owed a duty to Plaintiff and Class Members to keep their PII confidential.

105.    Defendants permitted the public disclosure of Plaintiff's and Class Members' PII to unauthorized third parties.

106.    The PII that was disclosed without the Plaintiff's and Class Members' authorization was highly sensitive, private, and confidential. The public disclosure of the type of PII at issue here would be highly offensive to a reasonable person of ordinary sensibilities.

107.    Defendants permitted their information technology environment to remain vulnerable to foreseeable threats, which created an atmosphere for the Data Breach to occur. Despite knowledge of the substantial risk of harm created by these conditions, Defendants intentionally disregarded the risk, thus permitting the Data Breach to occur.

108.    By permitting the unauthorized disclosure, Defendants acted with reckless disregard for Plaintiff's and Class Members' privacy, and with knowledge that such disclosure would be highly offensive to a reasonable person. Furthermore, the disclosure of the PII at issue was not newsworthy or of any service to the public interest.

109.     Defendants was aware of the potential of a data breach and failed to

adequately safeguard their systems and/or implement appropriate policies and procedures to prevent the unauthorized disclosure of Plaintiff's and Class Members' data.

110.   Defendants acted with such reckless disregard as to the safety of Plaintiff's and Class Members' PII to rise to the level of intentionally allowing the intrusion upon the seclusion, private affairs, or concerns of Plaintiff and Class Members.

111.   Plaintiff and Class Members have been damaged by the invasion of their privacy in an amount to be determined at trial.

## COUNT 5: DECLARATORY JUDGMENT

112.   Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

113.   Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

114.   An actual controversy has arisen in the wake of Defendants' data breach regarding their present and prospective common law and other duties to reasonably safeguard their customers' PII and whether Defendants is currently

maintaining data security measures adequate to protect consumers from further unauthorized disclosures of their PII.

115. Plaintiff alleges that Defendants' data security measures remain inadequate. Plaintiff will continue to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

116. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a. Defendants continue to owe a legal duty to secure PII and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes.

    b. Defendants continue to breach this legal duty by failing to employ reasonable measures to secure Plaintiff and Class Members' PII.

117. The Court also should issue corresponding prospective injunctive relief requiring that Defendants employs adequate data protection practices consistent with law and industry standards.

118. If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach. The risk of another such breach is real, immediate, and substantial. If another breach occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and Plaintiff will be forced to bring multiple lawsuits to rectify the same conduct.

119. The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued. Among other things, if another massive data breach occurs, Plaintiff will likely be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Defendants of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendants has a pre-existing legal obligation to employ such measures.

120. Issuance of the requested injunction will not do a disservice to the public interest. To the contrary, such an injunction would benefit the public by encouraging Defendants to take necessary action to prevent another data breach, thus eliminating the additional injuries that would result to Plaintiff and the millions of individuals whose PII would be at risk of future unauthorized disclosures.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully requests that the Court enter judgment as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Classes and counsel for Plaintiff as Class Counsel;

B. For an order declaring the Defendants' conduct violates the statues and causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Classes on all counts

asserted herein;

D. Ordering Defendants to pay for lifetime credit monitoring and dark web scanning services for Plaintiff and the Classes;

E. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F. For prejudgment interest on all amounts awarded;

G. For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendants' conduct;

H. For injunctive relief as pleaded or as the Court may deem proper;

I. For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

J. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

DATE: December 12, 2025

By: */s/ Gregory A. Mitchell*
E. Powell Miller (P39487)
Gregory A. Mitchell (68723)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
T: (248) 841-2200
epm@millerlawpc.com

gam@millerlawpc.com

AND

Paul Doolittle
Andre Belanger
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: paul.doolittle@poulinwilley.com
andre.belanger@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiff and Proposed Class*